**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **TIM TRECKMAN On Behalf of Himself and All Others Similarly Situated,** | § § § § | |
| **PLAINTIFF,** | § | **Civ. No. 1:22-cv-76** |
| | § | |
| **v.** | § | |
| | § | |
| **3M COMPANY, JOHNSON CONTROLS INC., TYCO FIRE PRODUCTS, L.P., THE ANSUL COMPANY, CHEMGUARD, INC., NATIONAL FOAM, INC., KIDDE-FENWAL, INC., KIDDE FIREFIGHTING, INC., U.S. PUMP COMPANY, LLC, and WILLIAMS FIRE & HAZARD CONTROL** | § § § § § § § § § § § | **JURY TRIAL DEMANDED** |
| **DEFENDANTS.** | § | |

### PLAINTIFF'S ORIGINAL CLASS ACTION COMPLAINT

1.     Plaintiff Tim Treckman brings this case on behalf of himself and on behalf of all others similarly situated as a class action against 3M Company, Johnson Controls, Inc., Tyco Fire Products, LP, The Ansul Company, Chemguard, Inc., National Foam, Inc., Kidde-Fenwal, Inc. US Pump Company, LLC, and Williams Fire & Hazard Control (collectively the "Defendants") pursuant to Rule 23 of the Federal Rules of Civil Procedure.

2.     This class action is based on exposure to industrial firefighting foam which contains chemicals known to cause harmful health outcomes in humans. Plaintiff and Class Members are firefighters and first responders. One of the methods they employed to combat fires involves the use of industrial foam to put out the flames. This foam contains Per- and Polyfluoroalkyl substances (herein known as "PFAS"). PFAS are a group of synthetic chemicals

1

which have been linked to various adverse health conditions. ( https://www.epa.gov/pfas/basic-information-pfas, last visited August 5, 2021). PFAS is known to cause harmful reproductive, developmental and immunological effects, liver and kidney damage, and tumors. *Id.* PFAS chemicals accumulate in the body and stay for long periods of time. *Id.* PFAS chemicals have also been called "Forever Chemicals" due to this property. (*See* https://forbes.com/sites/brucelee/2020/01/23/what-is-in-your-drinking-water-how-about-pfas-forever-chemicals-report-warns/#4c12189e5906, last visited August 5, 2021.) Plaintiff and Class Members were exposed to these chemicals and have suffered injuries as a result.

3.      Defendants 3M, Johnson Controls, Inc., Tyco Fire Products, LP, The Ansul Company, Chemguard, Inc., National Foam, Inc., Kidde-Fenwal, Inc., US Pump Company, LLC, and Williams Fire & Hazard Control, manufactured, sold, and distributed the firefighting foam containing PFAS chemicals used by Plaintiff and Class Members despite knowing that PFAS was inherently dangerous and presented an unreasonable risk of harm to human health and the environment. Defendants marketed and sold their firefighting foam with the knowledge that it contained PFAS chemicals including PFOA and PFOS and that such chemicals were harmful to human health. Defendants breached their duty to those who use their products to avoid selling products that were unreasonably dangerous and harmful and further breached its duty to warn of the potential harmful effects of its products.

## JURISDICTION AND VENUE

4.      This Court has original jurisdiction over Plaintiff's claims pursuant to the Class Action Fairness Act and 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in where there are in excess

of 100 class members and some of the class members are citizens of a state diverse from that of Defendants.

5.     This Court has personal jurisdiction over Defendants because Defendants have purposefully availed themselves of the privileges of conducting activities in the state of Texas and has established minimum contacts sufficient to confer jurisdiction. Defendants regularly do business in Texas, advertises in Texas, and market to Texas consumers. Further, some of the injuries forming the basis of this lawsuit occurred in Texas. Therefore, the assumption of jurisdiction over Defendants will not offend traditional notions of fair play and substantial justice and is consistent with the constitutional requirements of due process. Additionally, Defendants have had systemic contacts with the State of Texas sufficient to establish general jurisdiction over Defendants.

6.     Venue is proper in this district under 28 U.S.C. §1391 because a substantial part of the act or omissions giving rise to the claims in this Complaint took place in this district.

## PARTIES

7.     Plaintiff Tim Treckman is a resident of Travis County, Texas. During the relevant time period, Plaintiff Treckman worked as a firefighter for the City of Austin Fire Department and stationed at Austin-Bergstrom International Airport where he was exposed to Aqueous Film-Forming Foam ("AFFF") which contained PFAS chemicals.

8.     Defendant 3M is a Minnesota corporation authorized to conduct business in Texas. It may be served with process through its registered agent for service of process in Texas – Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

9.     Defendant Johnson Controls, Inc. is a Wisconsin corporation authorized to conduct business in the State of Texas. Said Defendant may be served with process by and through its registered agent for service of process, CT Corporation at 1999 Bryan Street, Suite 900, Dallas, TX 75201.

10.     Defendant Tyco Fire Products, LP is a Delaware company authorized to conduct business in the State of Texas. Said Defendant may be served with process by and through its registered agent for service of process, CT Corporation at 1999 Bryan Street, Suite 900, Dallas, TX 75201.

11.     Defendant The Ansul Company is a company that was purchased and is owned by Defendant Tyco Fire Products, LP. Defendant Tyco Fire Products manufactures the Ansul brand of products and is the successor-in-interest to the company formerly known as The Ansul Company. Said Defendant may be served with process by and through its registered agent for service of process CT Corporation at 1999 Bryan Street, Suite 900, Dallas, TX 75201.

12.     Defendant Williams Fire & Hazard Control is a company that was purchased and is owned by Defendant Tyco Fire Products, LP. Defendant Tyco Fire Products manufactures the Williams Fire & Hazard Control brand of products and is the successor-in-interest to the company formerly known as Williams Fire & Hazard Control. Said Defendant may be served with process by and through its registered agent for service of process CT Corporation at 1999 Bryan Street, Suite 900, Dallas, TX 75201.

13.     Defendant Chemguard, Inc. is a Texas corporation. Said Defendant may be served with process by and through its registered agent for service of process, CT Corporation at 1999 Bryan Street, Suite 900, Dallas, TX 75201.

14.     Defendant Kidde-Fire Fighting, Inc. is a Pennsylvania corporation authorized to conduct business in the State of Texas. Said Defendant may be served with process by and through its registered agent for service of process, CT Corporation at 1999 Bryan Street, Suite 900, Dallas, TX 75201.

15.     Defendant Kidde-Fenwal, Inc. is a Delaware corporation authorized to conduct business in the State of Texas. Said Defendant is the successor-in-interest to Kidde Fire Fighting, Inc. Defendant Kidde-Fenwal, Inc. may be served with process by and through its registered agent for service of process CT Corporation at 1999 Bryan Street, Suite 900, Dallas, TX 75201.

16.     Defendant National Foam, Inc. is a Delaware corporation authorized to conduct business in the State of Texas. Said Defendant may be served with process by and through its registered agent for service of process CT Corporation at 1999 Bryan Street, Suite 900, Dallas, TX 75201.

17.     Defendant U.S. Pump Company, LLC is a Delaware company authorized to conduct business in the State of Texas. Said Defendant may be served with process by and through its registered agent for service of process CT Corporation at 1999 Bryan Street, Suite 900, Dallas, TX 75201.

18.     The Class Members are first responders who used or were exposed to fire-fighting foam containing PFAS chemicals. Included in this class are parents, spouses, children, guardians, and legal representatives of such persons with direct or derivative claims.

19.     Upon information and belief, Defendant Johnson Controls, Inc. owns, operates, and controls Defendants Tyco Fire Products, LP and Chemguard, Inc. At all relevant times, Defendants Tyco Fire Products, LP and Chemguard, Inc. manufactured, marketed, promoted, distributed, and/or sold Aqueous Fire Fighting Foam that contained PFAS chemicals, such as

PFOA, PFOS, and other toxic substances used by fire departments across the country. Upon information and belief, these chemicals were manufactured, marketed, promoted, distributed and/or sold at the direction of Defendant Johnson Controls, Inc.

## FACTUAL BACKGROUND

### Health Effects of PFAS

20.     PFAS chemicals are chemical compounds containing fluorine and carbon atoms. These chemicals have been used in the manufacture of, among other things, household and commercial products that resist heat, stains, oil, and water. These substances are not naturally occurring and must be manufactured.

21.     PFAS chemicals have unique properties that cause them to be: (1) mobile and persistent, meaning that they readily spread into the environment where they are very slow to break down, (2) tend to accumulate in organisms, and (3) pose a serious health risk to humans.

22.     PFAS chemicals are characterized by the presence of multiple carbon-fluorine bonds, which are exceptionally strong and stable. As a result, they resist degradation due to light, water, and time.

23.     These very qualities of strength and stability which make them highly useful for industrial applications also causes them to be more harmful to humans. PFAS chemicals accumulate in the human body over time, where they can remain for many years.

24.     The chemical structure of PFAS substances make them resistant to being broken down by the human body or by environmental degradation. As a result, they are persistent when released and ingested.

25.     Exposure to PFAS chemicals, including PFOA and PFOS, can be toxic and pose serious health risks to humans.

26.     Many parties have studied the effects of PFAS, including PFOA and PFOS, and have concluded that exposure to such chemicals is associated with the development of numerous serious medical conditions. These chemicals were the subject of a study formed out of a class action settlement arising out of water contamination from DuPont's Washington Works facility in Wood County, West Virginia.

27.     The science panel involved in that case consisted of three epidemiologists specifically tasked with determining whether there was a link between PFAS exposure and human diseases. In 2012, the panel found a probable link between PFAS, including PFOA and PFOS and kidney cancer, testicular cancer, ulcerative colitis, thyroid disease, pregnancy induced hypertension (including preeclampsia), and hypercholesterolemia.

28.     In May 2015, based on concerns about these chemicals being released into the environment, scientists and other professionals from a variety of disciplines issued the "Madrid Statement on Poly- and Perfluoroalkyl Substances (PFASs)", a policy statement calling for greater regulations, restrictions, and limits on the manufacture and handling of any such chemicals as well as the development of safe, non-fluorinated alternatives to these products to avoid long-term harm to human health and the environment.

29.     In May 2016, the United States Environmental Protection Agency issued Lifetime Health Advisories against exposures to PFAS chemicals and PFOA and PFOS.

**PFAS Exposure**

30.     As note herein, PFAS chemicals are used to suppress certain types of fires, particularly fires involving flammable liquids such as oil and gasoline. This foam poses a danger to all Class Members.

31.   As noted above, PFAS is a manmade chemical that belongs to a group of fluorine-containing chemicals called perfluorinated chemicals ("PFCs"). These chemicals are used to make commercial products that resist heat and chemical reactions, and repel oil, stains, grease, and water.

32.   PFAS chemicals are readily absorbed after consumption or inhalation, and they accumulate primarily in the blood stream, kidney and liver.

33.   For over 50 years, PFAS chemicals have been known to be dangerous to humans as these chemicals can build up in the blood over time to cause lethal effects.

34.   Numerous studies have been conducted over the years describing the harmful effects of PFAS. Indeed, by the 1960s, animal studies performed by 3M and DuPont revealed that PFAS chemicals could pose significant health risks. First, in 1950, a study was conducted by 3M on mice which revealed that PFAS builds up in blood. In 1956, Stanford University conducted a study which found that PFAS binds to proteins in human blood. In 1961, DuPont toxicologists warn that PFAS chemicals enlarge rat and rabbit livers. In 1962, volunteers who smoke PFAS laced cigarettes contract "polymer fume fever." The following year, a 3M technical manual deems PFAS toxic.

35.   The following timeline of events establishes that PFAS is harmful and causes health risks:

a.   1965 – DuPont rat study shows liver damage and increased spleen size.

b.   1966 – 3M study finds that PFAS causes "acute oral toxicity" in rats.

c.   1970 – 3M warns Fire Journal, the magazine of the National Fire Protection Association, that PFAS is toxic to fish.

d.   1970 – DuPont scientists determine that PFAS is "highly toxic when inhaled".

e.      In or about 1977, Defendant Ansul was also aware of the environmental and toxic effects of its Aqueous Film-Forming Foam and undertook a study into more environmentally safe versions of the product.

f.      1978 – 3M animal tests find lesions on the spleen, lymph nodes and bone marrow of test subjects.

g.      1981 – 3M animal studies reveal PFAS causes birth defects in the eyes of developing fetuses. That same year, a DuPont worker at its Teflon plant in West Virginia gave birth to a son with multiple facial defects. In response, 3M and DuPont reassigned all of their female workers who worked in PFAS plants.

h.      1983 – 3M declares that PFAS' potential harm to the immune system is a "cause for concern".

i.      1989 – A study conducted by 3M finds increased rates of cancer among PFAS workers.

j.      1997 – A DuPont study reveals elevated cancer rates among workers at its Parkersburg plant.

k.      A 1997 a material safety data sheet for one of 3M's products, the ingredients for which were listed only as water, PFOA and other PFAS substances, contained a warning that the product includes "a chemical which can cause cancer." "1983 and 1993 studies conducted jointly by 3M and DuPont" were cited as support for this warning.

l.      1998 – 3M provides the EPA with evidence that PFAS accumulates in the blood.

m.      1998 – the EPA began investigating the safety of PFAS chemicals after the limited disclosure by 3M.

n.    1998 – a 3M study finds PFAS exposure causes liver damage in animals.

o.    2003 – 3M conducts a mortality study of its workers exposed to PFOS and finds increased rates of bladder cancer in those with high exposure jobs.

p.    2005 – the U.S. Department of Health and Human Services found that "human exposure to PFOA and PFOS lead to buildup of these chemicals in the body."

q.    2009 – 3M performed a follow-up study of its workers exposed to PFOA and found an increased incidence of prostate cancer.

r.    2009 – the EPA issued Provisional Health Advisories for PFOA and PFOS, advising that "action should be taken to reduce exposure" to drinking water containing levels of PFOA and PFOS exceeding 400 parts per trillion ("ppt") and 200 ppt, respectively. (*See* https://www.epa.gov/sites/default/files/2015-09/documents/pfoa-pfos-provisional.pdf, last visited August 10, 2021).

s.    2015 – The "Madrid Statement on Poly- and Perfluoroalkyl Substances (PFASs)" was issued by scientists and other professionals from a variety of disciplines who called for greater regulation, restriction, and limits on the manufacture and production of productions containing PFAS chemicals and called to develop safer alternatives to these products to avoid long-term harm to human health. (*See* Arlene Blum, Simona A. Balan, Martin Scheringer, Xenia Tier, Gretta Goldenman, Ian T. Cousins, Miriam Diamond, Tony Fletcher, Christopher Higgins, Avery E. Lindeman, Graham Peaslee, Pim de Voogt, Zhanyn Wang, and Roland Weber. The Madrid Statement on Poly- and Perfluoroalkyl Substances (PFAS). Environ. Health Perspect. May 2015; 123(5):A107-A111).

36.     In February 2020, the EPA issued its PFAS action plan program update designed to curb the harmful effects of PFAS. The action plan can be found at https://www.epa.gov/sites/default/files/2020-01/documents/pfas_action_plan_feb2020.pdf.

37.     The administrator of the EPA stated as follows:

Last year, the U.S. Environmental Protection Agency (EPA) issued the first-ever PFAS Action Plan- a historic step in our nation's efforts to address per and polyfluoroalkyl substances (PFAS) in the environment. The Action Plan represented a number of important first for the agency. It was the first time we have used all of our program offices to deal with an emerging chemical of concern. It was the also the first time the agency had put together a multi-media, multi-program national research and risk communication plan to address a challenge like PFAS.

*Id.*

38.     PFAS can remain in the environment for many years. PFAS can move through the soil and into groundwater or be carried in air and inhaled. Human studies show associations between increased PFAS levels in blood and an increased risk of severe health effects, including effects on the liver, the immune system, high cholesterol levels, increased risk of high blood pressure, changes in thyroid hormone, ulcerative colitis (an autoimmune disease), pre-eclampsia (a complication of pregnancy that includes high blood pressure), and kidney and testicular cancer.

39.     These injuries can arise months or years after exposure to PFAS.

40.     PFAS' extreme persistence in the environment and its toxicity, mobility, and bioaccumulation potential, pose potential adverse effects to human health and the environment.

**Foam containing PFAS chemicals is frequently used to fight fires**

41.     Aqueous Film-Forming Foam ("AFFF") is a Class-B fire fighting foam that is mixed with water and is used to combat fires that involve hydrocarbon fuels such as petroleum or other flammable liquids.

42.     AFFF is formed synthetically by combining fluorine-free hydrocarbon foaming agents with surfactants. When mixed with water, the resulting solution produces an aqueous film that spreads across the surface of hydrocarbon fuel. This film cools the liquid fuel and prevents the formation of flammable vapors, dramatically reducing the intensity of the fire.

43.     By at least the end of the 1990s, additional research and testing indicated that chemicals from PFAS can cause Leydig cell (testicular) cancer, liver cancer, and pancreatic cancer.

44.     Despite this, Defendants intentionally and willfully chose to manufacture foam using PFAS chemicals, including PFOAs and PFOSs.

45.     The Defendants knew or should have known that PFAS chemicals present significant risks to human health and welfare.

46.     Yet, the Defendants manufactured, marketed, and sold their AFFF products with full knowledge that they contained PFAS chemicals which, when released would pose dangers to human health.

47.     Moreover, the instructions, labels, and material safety data sheets provided with the AFFF manufactured, marketed and sold by Defendants did not fully disclose the health and environmental hazards of AFFF, of which Defendants knew or should have known at the time of manufacture and/or distribution.

48.     Upon information and belief, Defendants knew of the health and environmental hazards for years and yet failed to warn consumers and the public of the dangerous effects of PFAS chemicals.

49.     Plaintiff and Class Members were not warned by Defendants of the health risks associated with using Defendant's AFFF products.

50.    Federal law imposes a duty on chemical manufacturers and distributors to immediately notify the Environmental Protection Agency if they have information that "reasonably supports the conclusion that such substance or mixture presents a substantial risk of injury to health or the environment." Toxic Substances Control Act ("TSCA") § 8(e), 15 U.S.C. § 2607(e). Defendants have not complied with this duty. Defendants knew or should have known that their AFFF containing PFAS chemicals, including PFOA or PFOS would very likely injure and/or threaten the health of others.

51.    On information and belief, this knowledge was made available to Defendants. In 1970, a firefighting trade association was alerted to the toxic effects on fish of PFAS chemicals. Defendants Ansul, Chemguard, and National Foam were members of this trade association.

52.    Nevertheless, the Defendants continued to manufacture AFFF containing PFAS chemicals including PFOA and PFOS would be released into the environment during firefighting operations.

53.    The Defendants knew of the health risks and yet failed to warn or take reasonable steps to ensure that their products were safe.

54.    As a direct and proximate result of this failure to warn, the PFAS chemicals in AFFF products were permitted to enter the air and came into contact with the Plaintiff and Class Members. As such, harmful PFAS chemicals are now in Plaintiff's and Class Members' bodies affecting their health.

**Plaintiff and Class Members Have Been Seriously Harmed from Exposure to PFAS Chemicals**

55.    Plaintiff and Class Members have been exposed to PFAS chemicals through the use of AFFF to fight fires.

56.     Defendants supplied the AFFF containing PFAS chemicals to fire departments where they were used by Plaintiff and Class Members.

57.     Defendants knew or should have known that the AFFF it provided to fire departments and used by Plaintiff and Class Members contained PFAS chemicals that were harmful.

58.     Plaintiff Treckman worked for the Austin Fire Department for over 35 years. For the last 19 of those years, Plaintiff was stationed at the Austin-Bergstrom International Airport where he used AFFF foam containing PFAS chemicals on numerous occasions.

59.     While using AFFF to fight fires, Plaintiff came into close contact with and inhaled and/or ingested foam containing PFAS chemicals.

60.     On January 2, 2021, Plaintiff was diagnosed with type 2 renal cell carcinoma.

61.     Class Members have also used or been exposed to AFFF containing PFAS chemicals.

62.     Class Members have also come in contact with and inhaled and/or ingested the harmful foam.

63.     Class Members have also experienced physical injuries as a result of their exposure to Defendant's AFFF products.

## **CAUSATION**

64.     Plaintiff incorporated all factual allegations made above.

65.     Defendants manufactured, sold, and supplied harmful AFFF products which were used by Plaintiff and Class Members.

66.     AFFF from each of the Defendants has been used by Plaintiff and Class Members and has been inhaled and/or ingested by Plaintiff and Class Members which has caused injuries to the Plaintiff and Class Members.

67.     Therefore, the acts and omissions of Defendants described in this Complaint, taken separately and/or collectively, constitute a direct and proximate cause of the injuries and damages set forth below for the Plaintiff and Class Members.

68.     The amount of each Defendant's respective share of liability shall be determined by the jury.

## MEDICAL MONITORING CLASS ALLEGATIONS

69.     Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the Class Members, which is comprised of:

> **All first responders who have used and/or have been exposed to AFFF products containing PFAS chemicals as well as all parents, spouses, children, guardians, and legal representatives of such persons with direct or derivative claims.**

70.     As a result of Plaintiff's and Class Members' exposure to proven hazardous substances released into the environment by Defendants, Plaintiffs and Class Members are, in reasonable probability, at an increased risk of contracting serious latent diseases proximately caused by their exposure to the chemicals. Plaintiff's and Class Members' increased risk justifies reasonable and necessary periodic medical examinations which would make early detection and treatment possible and beneficial to Plaintiff and Class Members.

71.     **Numerosity.** The number of members in the Class is believed to be in the thousands. This volume makes bringing the claims of each individual member of the class before this Court impracticable. While the identities of each Class Member are not known at this time,

their identities can be discovered by using publicly available records. To require individual actions would prejudice the Court, the Class and Defendants.

72. **Typicality**. Plaintiff's claims are typical of the Class because like the members of the Class, Plaintiff was subjected to Defendants' unlawful acts and omissions which caused Plaintiff and Class Members to be harmed by dangerous chemicals. Plaintiff was exposed to the same toxic substances as Class Members. Moreover, Plaintiff suffered injuries that are common to the Class due to the exposure to the toxins. Due to the latency period and the potentially concealed nature of the complications due to the exposure to carcinogens, medical monitoring, testing or treatment is necessary for each member of the Class. Plaintiffs and the Class have been harmed as a result of Defendants' unlawful acts and omissions. It was Defendant's common acts that caused the injuries to Plaintiffs and the Class Members. As such, Plaintiff's claims are typical of the claims of the Class. Plaintiffs and all members of the Class sustained damages arising out of and caused by Defendants' common course of conduct in violation of law as alleged herein.

73. **Adequacy**. Plaintiff is a representative party who will fairly and adequately protect the interests of the Class because it is in his interest to effectively prosecute the claims herein alleged in order to obtain the relief required under Texas law. Plaintiffs have retained attorneys who are competent in both class actions and complex personal injury litigation. Plaintiff's Counsel include lawyers who are board certified in Personal Injury Trial Law by the Texas Board of Legal Specialization and have served as class counsel in well over 75 class actions and/or collective actions. Plaintiffs do not have any interest which may be contrary to or in conflict with the claims of the Class they seek to represent.

74. **Commonality**. Common issues of fact and law predominate over any individual questions in this matter. The common issues of fact and law include, but are not limited to:

- Whether Defendants knew or should have known that exposure to PFAS chemicals could cause health risks.

- Whether Defendants knew or should have known that their manufacture of AFFF containing PFAS chemicals was unreasonably dangerous.

- Whether Defendants failed to sufficiently warn users of the potential for harm that resulted from the use of their products.

- The amount of damages sustained by Plaintiff and Class Members.

- Whether Defendants are liable for punitive damages.

75.     **Superiority.**  A class action is superior to other available means for the fair and efficient adjudication of this lawsuit. Individual litigation would magnify the delay and expense to all parties and flood the court system with duplicative lawsuits. Prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying judicial results and establish incompatible standards of conduct for Defendants.

76.     A class action, by contrast, presents far fewer management difficulties and affords the benefits of uniform adjudication of the claims, financial economy for the parties, and comprehensive supervision by a single court. By concentrating this litigation in one forum, judicial economy and parity among the claims of the individual Class Members are promoted. Additionally, class treatment in this matter will provide for judicial consistency. Notice of the pendency and any resolution of this action can be provided to the Class by mail, electronic mail, text message, print, broadcast, internet and/or multimedia publication. The identity of members of the Class is readily identifiable from public records.

77.     Moreover, many of the Class Members may be unaware of their plight and the full extent of their injuries. They require identification, screening, and education. Class Certification

is appropriate as Plaintiffs also seek equitable relief in the form of notification and medical monitoring so that each Class Member can be advised of their increased risk of cancer and be examined and monitored for potential long-term adverse effects.

78.     This type of case is well suited for class action treatment because: (1) Defendants' practices, policies, and/or procedures were uniform; (2) Defendants' conduct caused Plaintiff and Class Members to be exposed to harmful chemicals; (3) the exposure to these harmful chemicals caused injuries to the Plaintiff and Class Members. Ultimately, a class action is a superior method to resolve the claims detailed herein because of the common nucleus of operative facts centered on the unlawful conduct of Defendants.

## COUNT I
## NEGLIGENCE AND GROSS NEGLIGENCE

79.     Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

80.     Defendants knew or should have known that exposure to PFAS chemicals, including PFOA and PFOS, was hazardous to human health.

81.     Given that the Defendants were aware of these chemicals' potential for bioaccumulation in humans as well as the links to numerous serious medical conditions, including cancer, the Defendants knew or should have known that the manner in which they were manufacturing, marketing, and selling AFFF containing PFAS chemicals would be hazardous to human health.

82.     Defendants knew or should have known that PFAS chemicals are highly likely to injure others. Defendants also knew or should have known that the manner in which they were manufacturing, marketing, and selling AFFF containing PFAS chemicals would result in first responders using their AFFF.

18

83.     In fact, Defendants marketed and sold their products with knowledge that AFFF containing PFAS chemicals would be used in firefighting situations.

84.     Nevertheless, Defendants marketed and sold their products with knowledge that AFFF containing toxic PFAS chemicals would create an unreasonable risk of harm to first responders and the communities in close proximity to the use of AFFF.

85.     Knowing of the dangerous and hazardous properties of AFFF, and the manner in which AFFF would be used, it was reasonably foreseeable that AFFF would injure the first responders and those living in communities nearby.

86.     Defendants therefore knew or should have known that safety precautions would be required to prevent the release of harmful PFAS chemicals, including PFOA and PFOS.

87.     Further, Defendants should have acted reasonably by not placing inherently dangerous AFFF into the marketplace.

88.     Though AFFF is effective at extinguishing otherwise difficult fires, the potential for widespread and persistent harm and the development of numerous serious medical conditions far outweighs any social utility gained from AFFF's firefighting ability.

89.     The magnitude of the burden on Defendants to guard against this foreseeable harm to Plaintiff and Class Members was minimal, as the practical consequences of placing this burden on Defendants amounted to providing adequate instructions, proper labeling, and sufficient warnings about their AFFF products.

90.     As manufacturers, Defendants were in the best position to provide adequate instructions, proper labeling, and sufficient warnings about their AFFF products.

91.     Considering the factors related to risk, foreseeability, social utility, the burden of guarding against the harm, and the practical consequences of placing that burden on Defendants, Defendants owed multiple cognizable duties to Plaintiff and the Class Members.

92.     Defendants had a duty not to produce, manufacture, and place in the stream of commerce products that injure others, like Plaintiff and Class Members.

93.     Defendants had a duty to warn of the hazards associated with AFFF containing PFAS chemicals.

94.     As manufacturers, marketers, and sellers of AFFF, Defendants owed Plaintiffs a duty to exercise reasonable care to ensure that AFFF was manufactured, marketed, and sold in such a way that the end users of AFFF were aware of the potential harm from PFAS including PFOA and PFOS.

95.     Defendants owed Plaintiff and Class Members a duty to warn and notify them of the potential hazards of their AFFF before Plaintiff and Class Members were injured.

96.     Defendants breached these duties.

97.     As a result, Defendants acted negligently, recklessly, willfully, wantonly, and/or intentionally and those actions caused the injuries to Plaintiff and Class Members.

98.     Defendants' breaches of their duties were direct and proximate causes of the injuries, damages, and the harm the Plaintiff and Class Members have suffered to their health.

99.     Plaintiff and Class Members suffered foreseeable injuries and damages as a proximate result of the Defendants' breach of their duties as set forth above. At the time the Defendants breached their duties to Plaintiff and the Class Members, Defendants' act and/or failures to act posed recognizable and foreseeable possibilities of danger to Plaintiff and the Class Members so apparent as to entitle them to be protected against such action or inactions.

100.    Accordingly, Plaintiff and Class Members seek damages from Defendants in an amount to be determined at trial in a sufficient amount to compensate them for the injuries and losses.

## COUNT II
## STRICT PRODUCTS LIABILITY – FAILURE TO WARN

101.    Plaintiff hereby repeats, realleges, and reiterates each and every allegation in the preceding paragraphs as if fully restated herein.

102.    As commercial manufacturers, sellers, and distributors of AFFF, Defendants knew or should have known that exposure to PFAS chemicals, including PFOA and PFOS, was hazardous to human health.

103.    Defendants knew or should have known that the manner in which they were manufacturing, marketing, and selling AFFF containing PFAS was hazardous to human health.

104.     Defendants knew or should have known that the manner in which they were manufacturing, marketing, and selling AFFF would result in others, including first responders, being physically harmed.

105.    AFFF's persistence, mobility, bioaccumulative potential, and the medical and scientific link between PFAS chemicals and numerous serious medical conditions should have alerted Defendants to warn others.

106.    Though the Defendants knew or should have known about the seriousness of the consequences of failing to warn about the inherent dangers associated with AFFF containing PFAS, Defendants failed to warn of the dangers inherent in the use of the product.

107.    Though the Defendants knew or should have known about the reasonably foreseeable hazards to human health and welfare associated with the use of AFFF containing PFAS by first responders and the communities within close proximity to major fires that were suppressed

by the use of AFFF containing PFAS, the Defendants failed to provide adequate warnings of, or take any precautionary measures to mitigate those hazards.

108.    The Defendants failed to provide sufficient warning that the use of AFFF containing PFAS would cause the product to, in all reasonable probability, harm others.

109.    Adequate instructions and warnings on the AFFF products could have reduced or avoided these foreseeable risks of harm to Plaintiffs and Class Members.

110.    Had the Defendants provided adequate warnings, Plaintiff and Class Members could have taken measures to avoid or lessen their exposure.

111.    The Defendants' failure to provide adequate and sufficient warnings for the AFFF that they manufactured, marketed and sold renders the AFFF a defective product.

112.    The Defendants' failure to warn was a direct and proximate cause of the injuries Plaintiff and Class Members experienced.

113.    As a result of the Defendants' conduct, Plaintiff and Class Members have been injured in that their exposure to PFAS, including PFOA and PFOS, has produced an increased level of such toxins in their blood stream, leading to the bioaccumulation of PFAS in their bodies and significantly increasing their risk of developing numerous serious medical conditions.

114.    As a result of the Defendants' manufacture, sale, or distribution of a defective product, the Defendants are strictly liable in damages to Plaintiff and Class Members.

115.    Defendants' actions were willful, wanton, reckless, and/or conducted with a reckless indifference to the rights of Plaintiff and Class Members.

**COUNT III**
**STRICT PRODUCTS LIABILITY – DESIGN DEFECT**

116.    Plaintiff hereby repeats, realleges, and reiterates each and every allegation in the preceding paragraphs as if fully restated herein.

117.    By virtue of manufacturing, marketing, and selling AFFF containing PFAS chemicals, including PFOA and PFOS, the Defendants had a strict duty not to place an unreasonably dangerous product into the stream of commerce that would injure others.

118.    The Defendants knew or should have known that exposure to PFAS chemicals, including PFOA and PFOS, was hazardous to human health when it, or products containing it, were used in their foreseeable and intended manner.

119.    The chemical makeup of the AFFF that they produced includes significant amounts of PFAS, including PFOA and PFOS, rendering the AFFF unreasonably dangerous.

120.    Knowing of the dangerous and hazardous properties of AFFF due to research and testing, the Defendants could have manufactured, marketed, and sold alternative designs or formulations of AFFF that did not contain PFAS, PFOA or PFOS.

121.    These alternative designs and/or formulations were already available, practical, and technologically feasible.

122.    The use of these alternative designs would have reduced or prevented the reasonably foreseeable harm to Plaintiff and the Class Members resulting from Defendant's manufacture, marketing, and sale of AFFF.

123.    As manufacturers of AFFF, the Defendants not only had the ability to alter their product in such a way that maintained the firefighting abilities of the product while eliminating its inherently unsafe character, but also were in the best position to do so.

124.    The link between PFAS chemicals and numerous serious medical conditions are not open and obvious conditions or part of general public knowledge of using AFFF.

23

125.     Therefore, even though AFFF is useful for fighting difficult fires, the inherent risks associated with its use far outweigh any firefighting benefits, thereby rendering AFFF unreasonably dangerous.

126.     The manufacture, sale, and distribution of unreasonably dangerous AFFF renders Defendants' AFFF products defective.

127.     Defendants' defective design and formulation of AFFF is the direct and proximate cause of the injuries to Plaintiffs and Class Members.

128.     As a direct result of Defendants' design and formulation of their AFFF, Plaintiff and Class Members have been injured in that their exposure to PFAS, including PFOA and PFOS, has produced an increased level of such toxins in their blood stream, leading to the bioaccumulation of PFAS in their bodies and significantly increasing their risk of developing numerous serious medical conditions.

129.     As a result of Defendants manufacture, sale, or distribution of a defective product, the Defendants are strictly liable in damages to Plaintiffs and Class Members.

130.     Defendants' acts were willful, wanton, reckless and/or conducted with a reckless indifference to the rights of Plaintiff and Class Members.

## CLAIM FOR MEDICAL MONITORING

131.     Plaintiff hereby repeats, realleges, and reiterates each and every allegation in the preceding paragraphs as if fully restated herein.

132.     Medical monitoring is especially appropriate in this case because the Plaintiff and Class Members (1) had significant exposure to a hazardous substance through the tortious actions of Defendants as described in this Complaint; (2) have an increased risk of contracting a serious latent disease from the exposure to the hazardous substances described in this Complaint; (3) the

increased risk makes periodic diagnostic medical examinations reasonably necessary; and (4) procedures exist which make the early detection and treatment of disease possible and beneficial.

133.    The Plaintiff and Class Members have been exposed to hazardous PFAS chemicals including PFOA and PFOS, and other toxic substances.

134.    As described more fully above in the Complaint, PFAS exposures, including PFOA and PFOS exposure, seriously increase the risk of contracting numerous diseases.

135.    The significantly increased risks associated with exposure to PFAS, including PFOS and PFOA, make periodic diagnostic medical examinations reasonable and necessary.

136.    A thorough medical monitoring plan can and should be developed for the Plaintiff and Class Members that will assist in the early detection and beneficial treatment of the numerous diseases that can develop as a result of exposure to PFAS chemicals.

## CLAIM FOR PUNATIVE DAMAGES

137.    Plaintiff hereby repeats, realleges, and reiterates each and every allegation in the preceding paragraphs as if fully restated herein.

138.    Upon information and belief, Defendants engaged in willful, wanton, malicious, and/or reckless conduct that was done without regard to the consequences or the safety of the Plaintiff or the Class Members which caused the injuries described in this Complaint.

139.    Defendants' acts or omissions, which when viewed objectively from the standpoint of Defendants at the time of occurrence, involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others. Defendants had actual, subjective awareness of the risk involved in the above-described acts or omissions, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of Plaintiff, Class Members and others.

140.    For that reason, Plaintiff and Class Members seek punitive damages.

## DAMAGES SOUGHT

141.    Plaintiff incorporates all factual allegations made above.

142.    As a direct and proximate result of the occurrence made the basis of this lawsuit, Plaintiff and Class Members were caused to suffer permanent injury.

143.    Plaintiff and Class Members seek the following:

a.    Declaring and certifying this case as a class action, appointing Plaintiff as the class representative, and Plaintiff's Counsel as Class Counsel;

b.    Establishing and funding a medical monitoring program, at Defendants' expense, to notify the Class Members of the dangers of the chemicals that were released into the air, and to monitor and test the health of each Class Member for future health risks, including cancer;

c.    Establishing a common fund on behalf of Plaintiffs and Class Members so as to distribute any and all funds necessary to reimburse them for their medical expenses, treatments, and economic losses;

d.    Plaintiff's past medical expenses;

e.    Plaintiff's past and future lost wages;

f.    Punitive damages; and

g.    Judgment against Defendants in the full amount awarded by the jury.

## JURY TRIAL DEMANDED

144.    Plaintiff hereby demands a trial by jury of all issues in this matter so triable pursuant to Federal Rules of Civil Procedure 38(b).

## PRAYER

Plaintiff, on behalf of himself and Class Members, demand judgment against Defendants, and each of them, jointly and severally, and request the following relief from the Court:

    A.    A declaration that Defendants acted with negligence, gross negligence, and/or willful, wanton, and careless disregard for the health, safety, and property of Plaintiffs;

    B.    An order establishing a medical monitoring protocol for Plaintiff and the Class Members;

    C.    An award to Plaintiffs of general, compensatory, exemplary, consequential, nominal, and punitive damages;

    D.    An order for an award of attorney fees and costs, as provided by law;

    E.    An award of pre-judgement and post-judgment interest as provided by law; and

    F.    An order for all such other relief that the court deems just and proper.

Respectfully submitted,

HODGES & FOTY, LLP

By: /s/ *David W. Hodges*
David W. Hodges
State Bar No. 00796765
dhodges@hftrialfirm.com
Don J. Foty
State Bar No. 24050022
dfoty@hftrialfirm.com
Jerry W. Mason
State Bar No. 24081794
jmason@hftrialfirm.com
4409 Montrose Blvd., Ste. 200
Houston, TX 77006
Tel. (713) 523-0001
Fax. (713) 523-1116

ATTORNEYS FOR PLAINTIFF AND
CLASS MEMBERS